IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA BERNHARDT,

    Plaintiff,

v.                                                                              USDC Civ. No. 17-1201 KG/KK

SOCIAL SECURITY ADMINISTRATION,
NANCY BERRYHILL, Acting Commissioner
of Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 10) filed May 9, 2018, in support of Plaintiff Lisa Bernhardt's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits. On August 7, 2018, Plaintiff filed her Motion to Reverse or Remand. (Doc. 23.) The Commissioner filed a Response in opposition on October 5, 2018 (Doc. 25), and Plaintiff filed a Reply on November 29, 2018 (Doc. 30). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that the Motion is not well taken and recommends that it be **DENIED**.

        **I.**        **Background and Procedural Record**

---

[1] United States District Judge Kenneth Gonzales entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 15)

1

Plaintiff alleges that she became disabled on August 17, 2009, at the age of 41[2] because of post traumatic stress disorder (PTSD), irritable bowel syndrome (IBS), and seizure disorder. (AR. 74) Although she did not allege fibromyalgia as a disabling condition in her application, Plaintiff's appeal centers on the Administrative Law Judge's failure to address this condition in determining that Plaintiff was not disabled. (Doc. 23 at 10-11.)

Plaintiff earned a bachelor's degree in human resources management, and served in the army for nearly twelve years until 1998, when she was discharged at the rank of staff sergeant. (AR. 43-44.) Thereafter, Plaintiff worked as a production planner for a company that manufactured conveyor systems for paper companies, as an assistant librarian, as a substitute teacher, as a sandwich maker at a Subway restaurant, and in the bakery and deli departments of a grocery store. (AR. 44-50.) Plaintiff stopped working in June 2009 because of her medical conditions. (AR. 50, 235.)

On June 25, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (AR. 11.) Plaintiff's application was denied initially on September 11, 2013 (AR. 73-83), and upon reconsideration on June 12, 2014 (AR. 85-101). On August 12, 2014, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR. 121.) ALJ David Bruce conducted a hearing on July 8, 2016. (AR. 39.) Plaintiff appeared in person at the hearing with her Attorney, Robert Gray.[3] (AR. 39.) The ALJ took testimony from Plaintiff (AR. 42-61), and from an impartial vocational expert (VE), Matthew Sprong (AR. 61-72.) On October 20, 2016, ALJ Bruce issued an unfavorable decision. (AR. 11-31.) On October 25, 2017, the Appeals Council

---

[2] The alleged onset date was twelve days before Plaintiff's forty-first birthday. (AR. 74)
[3] Plaintiff is represented in this proceeding by Attorney Benjamin Decker. (Doc. 23 at 12.)

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner from which Plaintiff now appeals. (AR. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v.*

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

*Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

*Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Plaintiff was not disabled at step five of the sequential evaluation. Specifically, the ALJ found that Plaintiff met the insured status requirements through June 30, 2015, and had not engaged in substantial gainful activity from the alleged onset date of August 17, 2009 through her date last insured of June 30, 2015. (AR. 13.) The ALJ determined at step two that Plaintiff had severe impairments of depressive and post-traumatic stress disorders, an ethanol use disorder, degenerative changes to the cervical spine, chronic obstructive pulmonary disease, a seizure disorder, and benign paroxysmal positional vertigo. (AR. 14.) The ALJ also found that Plaintiff had the following non-severe impairments: hyperlipidemia, a hiatal hernia, gastroesophageal reflux disease, anemia, irritable bowel

syndrome, hypertension, allergic rhinitis and rhinosinusitis, impaired hearing, a history of impaired liver function, neuropathy of the bilateral lower extremities, and thyroid dysfunction. (AR. 14.) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically, 20 C.F.R. 404.1520(d), 404.1525 and 404.1526. (AR. 18.) The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)

> except that [Plaintiff] was further limited to work requiring no climbing of ladders ropes, or scaffolds, which avoided any exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle as part of the job, which did not require concentrated exposure to dust, fumes, odors, gases, pulmonary irritants, weather, or extremes of heat and cold, and which was comprised of simple tasks and simple work-related decisions with no more than occasional contact with co-workers and supervisors and no more than frequent contact with the public.

(AR. 21.) Based on the RFC and the testimony of the VE, the ALJ concluded that Plaintiff was unable to perform past relevant work, but that there were jobs in significant numbers in the national economy that she could perform. (AR. 29-30.) As such, the ALJ determined that Plaintiff was not disabled. (AR. 31.)

In the Motion, Plaintiff argues (1) that the ALJ erred in failing to find that fibromyalgia was among Plaintiff' severe impairments at step two of the sequential evaluation, and (2) that the ALJ erred in his RFC because he did not attribute Plaintiff's complaints of disabling knee, hip, and shoulder pain to fibromyalgia. (Doc. 23 at 10-11; Doc. 30 at 2-3.) The Commissioner argues that the ALJ's failure to address Plaintiff's fibromyalgia was harmless error, and that the ALJ's RFC analysis appropriately accounted for Plaintiff's limitations. (Doc. 25 at 8-12.)

**Medical Evidence of Fibromyalgia[5]**

---

[5]Because Plaintiff's arguments are limited to the issue of the ALJ's failure to address fibromyalgia, the Court limits its discussion of Plaintiff's medical records to those that pertain to this condition.

6

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2P, 2012 WL 3104869, *2 (July 25, 2012). State agency medical consultant, Pat Chan, M.D., reviewed Plaintiff's records and concluded, in June 2014, that Plaintiff had a severe impairment of fibromyalgia. (AR. 93.) Plaintiff's medical records reflect that she has a history of joint pain that began as early as 1994. (Ar. 491, 1323.[6]) In July 2010, the Department of Veterans Affairs (VA) granted Plaintiff disability and unemployability benefits based on "fatigue, joint pains, muscle pains and cramps as due to a qualifying chronic disability" among other conditions. (AR. 207, 219.) This condition accounted for 20% of Plaintiff's 100% disability rating. (AR. 207.) And VA records from 2011 through 2014 reflect that fibromyalgia accounted for 20% of Plaintiff's "rated disabilities." (AR. 420-21, see AR. 367, 377, 380, 384-85, 387, 390, 397-403, 408-09, 417-18, 420-21, 1109-10, 1270-71.) However, treatment notes from Plaintiff's VA medical providers from 2011-2013 do not reflect a fibromyalgia or a joint pain diagnoses among Plaintiff's enumerated medical problems, nor do they reflect that Plaintiff had any limitations arising from these conditions. (See e.g., AR. 997-99 (5/9/2011), 990-91 (5/17/2011), 859 (4/12/2012), 796-97 (8/14/2012), 1112-13 (8/21/2013), 1200-04 (10/4/2013), 1154 (12/9/2013), 722-24 (4/15/2013), 1472-73 (11/12/2013).) "Primary fibromyalgia syndrome" appears in a "computerized problem list" generated as part of the progress notes related to a mental health residential rehabilitation program that Plaintiff entered in February 2014, and treatment notes from Plaintiff's group therapy sessions during that program reflect that Plaintiff has a fibromyalgia diagnosis. (AR. 1800, 1829, 1860-63.) However, these notes do not indicate that fibromyalgia caused Plaintiff any limitations, nor do they reflect that Plaintiff was

---

[6] These records indicate that Plaintiff's joint pain is not related to any activity, it happens spontaneously, and that Plaintiff was treating the pain with ibuprofen, and sometimes chiropractic care. (AR. 491,1323)

receiving treatment for that condition.  In sum, medical evidence related to Plaintiff's fibromyalgia condition is scant; and insofar as the record reveals, none of Plaintiff's treating or examining medical providers opined that fibromyalgia limits Plaintiff's work-related capabilities.

**Plaintiff Has Not Demonstrated that the ALJ's Failure to Address Fibromyalgia is Reversible Error**

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); *see Bowen*, 482 U.S. at 146, n.5 (stating that the claimant bears the burden at steps one through four of the sequential evaluation of establishing a disability).  And an ALJ is generally entitled to rely on claimant to allege impairments, and to rely on the claimant's counsel to structure and present the claimant's case in a way that ensures her claims are adequately explored.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).  Here, not only did Plaintiff fail to include fibromyalgia among her list of alleged impairments in her disability application, but neither she nor her counsel raised the issue of Plaintiff's fibromyalgia before the ALJ.  (AR. 85, see AR. 39-72.)  Moreover, there is sparse evidence in the record pertaining to Plaintiff's fibromyalgia.  And there is an *absence* of evidence pertaining to the origin of Plaintiff's fibromyalgia diagnosis, Plaintiff's treatment for the condition, or opinions from any treating physicians regarding Plaintiff's fibromyalgia-related limitations.  Under these circumstances, the fact that the ALJ did not address fibromyalgia is neither surprising nor erroneous.  *See id.* at 1062 ("ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.  The standard is one of reasonable good judgment."); *Hawkins*, 113 F.3d at 1167 ("Ordinarily, the claimant must in some fashion raise the issue sought to be developed" and "to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.").

**The ALJ Did Not Commit Reversible Error at Step Two**

Although she failed to identify fibromyalgia among her disabling conditions in her application for disability benefits or in her hearing testimony, Plaintiff argues that the ALJ erred at step two of the sequential evaluation by not considering fibromyalgia as the cause of her knee, hip, and shoulder pain. (Doc. 23 at 10.) Defendant argues that the ALJ would have found Plaintiff's allegations of pain credible had he considered that fibromyalgia produces "real pain that cannot be proven through objective medical evidence." (Doc. 23 at 11.) However, this argument is not rationally or evidentiarily supported.

As an initial matter, the ALJ's decision does not suggest that he disbelieved that Plaintiff has "real" knee, hip, and shoulder pain. Instead, his credibility determination was focused on the degree to which this pain limited Plaintiff's ability to engage in basic work activity. (AR. 18.) In that regard, the ALJ noted that Plaintiff testified that she could not stand on her feet for any amount of time, and that the pain that she experienced significantly impacted her ability to move about and manipulate objects.[7] (AR. 18.) However, the ALJ observed that Plaintiff's allegations of pain-related limitations were unsupported by objective medical evidence, and that x-rays from 2010, 2011, and 2012 showed no significant degenerative changes. (AR. 17-18.) The ALJ also noted that the absence of more recent objective medical evidence to support her allegations of pain was the result of Plaintiff's failure to pursue treatment. (AR. 18.) Additionally, the ALJ noted, and the record reflects that in 2014, Plaintiff was able to perform several activities that belied her contention about the severity of her limitations. For example, in 2014, Plaintiff was able to do tai chi, yoga, and sixty-minute fitness walks. (AR. 18, 1841, 1866, 1882, 1883-85.) The record also reflects that Plaintiff reported in 2011 that she was "exercising a lot" and

---

[7] Plaintiff also testified at the hearing that she has pain in "all different parts of [her] body" that she treats with Tylenol. (AR. 50-51.)

walking on a treadmill for 45 minutes at a time until her gynecologist advised her to stop losing weight" (AR. 425); and that in 2012 Plaintiff was regularly walking 3-4 miles each day. (AR. 382.) In sum, the record does not reflect that any treating physician opined that Plaintiff's knee, shoulder or hip pain caused the significant limitations alleged by Plaintiff; and the ALJ's credibility determination regarding the severity of Plaintiff's pain is supported by the evidence of record. Under these circumstances, the Court will not disturb the ALJ's credibility determination. *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001) (recognizing that the Court is compelled to accept an ALJ's credibility determinations regarding a claimant's subjective description of pain symptoms when the determination is linked to specific findings of fact and supported by substantial evidence); *Butler v. Astrue*, 410 F. App'x 137, 140 (10th Cir. 2011) (holding that an "absence of medical entries reflecting complaints as severe as [the claimant's] testimony at the hearing support[ed] the ALJ's credibility determination" regarding the extent of the claimant's pain).

The Court is not persuaded that the ALJ erred in failing to include fibromyalgia among Plaintiff's severe impairments at step two of the sequential evaluation. However, even were the Court to agree with Plaintiff's contention that the ALJ erred in that regard, it is well established that any error at step two becomes harmless where the ALJ proceeds to the next step instead of conclusively denying benefits at step two. (Doc. 23 at 10.) *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two."); *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007) (rejecting the claimant's argument that the ALJ erred in failing to determine that she had certain severe impairments at step two because the ALJ made an explicit finding that the claimant suffered from severe

impairments, and nothing further was required). Here, the ALJ found that Plaintiff had several severe impairments at step two, and appropriately proceeded to the next steps of the sequential evaluation. Assuming that his failure to find that fibromyalgia was a severe impairment constituted error, the error does not require reversal. *Hill*, 289 F. App'x at 292.

### The ALJ's RFC Analysis Does Not Reflect Reversible Error

Plaintiff argues, further, that the ALJ committed reversible error by failing to include an explicit function-by-function analysis of the sitting, standing, walking, pushing, pulling, kneeling, stooping or bending limitations caused by Plaintiff's fibromyalgia condition. (Doc. 23 at 11; Doc. 30 at 3.) In support of this argument, Plaintiff cites SSR 96-8P, which provides, in part, that

> [t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, *the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work* because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

1996 WL 374184, at *3 (italics added). Relying on the italicized portion of this ruling, taken out of context, Plaintiff argues that the ALJ erred in summarily concluding that Plaintiff was limited to "light work." (Doc. 23 at 11.) She maintains that if the ALJ had conducted a proper analysis, "he would have caught that Plaintiff's allegations of limitation in these domains were easily

explained by her fibromyalgia diagnosis." (Doc. 30 at 3.) These arguments do not demonstrate grounds for reversal.

First, the Court is not persuaded that the ALJ's decision was inconsistent with SSR 96-8P. The ALJ found that Plaintiff was limited to "light work as defined in 20 CFR 404.1567(b)" subject to enumerated limitations including, among others: no climbing of ladders, ropes, or scaffolds, avoiding unprotected heights, moving mechanical parts, and operating a motor vehicle. (AR. 21.) "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Such jobs may require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* And someone who can do light work can also do "sedentary work" as defined in subsection (a) of the same regulation. *Id.* The ALJ, having assessed that Plaintiff is capable of "light work" as defined by regulation, also identified and enumerated several specific additional exertional limitations. (AR. 21.) In his analysis, the ALJ considered each of Plaintiff's symptoms to the extent that they were consistent with the evidence of record, and ultimately determined that Plaintiff was unable to perform any past relevant work because the work that Plaintiff performed in her past jobs exceeded her exertional capacity. (AR. 22-30.) The ALJ's analysis of Plaintiff's RFC included a discussion of Plaintiff's "joint pain." [8] Insofar as the ALJ's decision clearly reflects his reasoning regarding Plaintiff's exertional limitations *vis a vis* her ability to perform past relevant work, Plaintiff's

---

[8] While the ALJ did not identify fibromyalgia in his RFC evaluation, he observed that as of May 6, 2010, the VA included "joint pain" among the conditions contributing to Plaintiff's disability rating. (AR. 28.) As to the VA disability rating, the ALJ reasoned that "[t]he system used to assess disability by the Veterans Administration is inherently different than that used by the Social Security Administration. While the totality of the evidence does indicate that the claimant's . . . physical impairments did impede her ability to perform . . . all work that existed in the national economy . . . the impairments did not so limit her as to preclude performance of work activity entirely. As such the [VA's] assessments are given weight only to the extent that they are consistent with the" RFC assessment. (AR. 28.)

argument that the ALJ committed reversible error by "summarily" concluding that Plaintiff was limited to "light work" in violation of SSR 96-8P is not persuasive. *See Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (stating that if the Court can follow an ALJ's reasoning and discern that he has applied the correct legal standards, his failure to include an explicit function-by-function analysis of a claimant's RFC does not constitute reversible error).

The Court is not persuaded that the ALJ's failure to identify Plaintiff's fibromyalgia diagnosis affected the outcome of his decision. Plaintiff's argument to the contrary rests primarily on the fact that state agency medical consultant, Dr. Chan, found Plaintiff's fibromyalgia to be a severe impairment. (Doc. 23 at 11.) However, in assessing Plaintiff's RFC, the ALJ gave Dr. Chan's opinion "great weight"; and Dr. Chan, having considered Plaintiff's "severe" fibromyalgia impairment, did not opine that Plaintiff had exertional limitations beyond those identified by the ALJ. (AR. 21, 92-93.) Because Plaintiff's exertional limitations as assessed by Dr. Chan were reflected in the ALJ's RFC assessment, Plaintiff's assertion of error is essentially based upon a technicality of drafting—*i.e.*, that the ALJ omitted the term "fibromyalgia" from his decision.[9] To the extent that this omission was error, it was harmless. *See Anderson v. Colvin*, 514 F. App'x 756, 760 (10th Cir. 2013) (holding that to the extent that the ALJ erred in using the phrase "cognitive disorder" instead of "Alzheimer's disease" to discuss an alleged impairment, the error was harmless because "the focus of the analysis is on the functional limitations caused by the impairment, not on the label attached to the impairment").

## IV. Conclusion

---

[9] Indeed, Plaintiff argues that "Defendant's own medical consultant, Dr. Chan, found that Plaintiff suffered from fibromyalgia that was severe. Fibromyalgia appears sixty-six (66 times in the record and zero (0) times in the ALJ's unfavorable decision." (Doc. 23 at 10.)

For the reasons stated above, the Court recommends Plaintiffs Motion to Reverse or Remand (Doc. 23) be **DENIED.**

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(c), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**